UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| GEORGE SCOTT MASON | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 4:07-cv-43 |
| TERRY STACEY in his official and | ) | Judge Mattice |
| individual capacities, | ) | |
| CLAY PARKER in his official and | ) | |
| individual capacities, | ) | |
| TIM MILLER in his individual capacity, and | ) | |
| TIM LANE in his individual capacity | ) | |

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

*Pro se* Plaintiff George S. Mason brings this action under 42 U.S.C. §§ 1983, 1985(2) & (3) and 1986.  This action arises from an incident which occurred on June 1, 2006 in which Plaintiff was arrested by Defendants Tim Miller and Tim Lane, members of the 17th Judicial District Drug Task Force, and charged with, *inter alia*, selling an illegal drug.  Among other claims, Plaintiff alleges Miller and Lane used excessive force to arrest him, refused him necessary medical treatment, and engaged in a conspiracy to fabricate drug charges against him to revoke his parole, send him to prison, and cover-up their use of excessive force.  Plaintiff also alleges that Bedford County Judicial Commissioner Terry Stacey and Bedford County Sheriff Clay Parker participated in the conspiracy to cover up Miller's and Lane's misdeeds.

1

Stacey and Parker have filed a joint motion for summary judgment (Court Doc. 57), and Lane and Miller have filed a joint motion for summary judgment (Court Doc. 51). In addition, the Court has conducted further review of the Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915(A). For the reasons stated herein, all Plaintiff's claims except two shall be dismissed. The claims which survive for trial are: (1) his claim brought under 42 U.S.C. § 1983 for damages against Lane and Miller for excessive force in violation of the Fourth Amendment and (2) his claim brought under 42 U.S.C. § 1983 for damages against Miller for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment.

## II.    BACKGROUND

### A.    Procedural History

Previously, following review of the Plaintiff's complaint under the Prisoner Litigation Reform Act, 28 U.S.C. § § 1915(e) and 1915A, ten defendants were dismissed in their individual and official capacities from this lawsuit for failure to state a claim for which relief can be granted (October 23, 2007 Memorandum and Order, Court Doc. 2). Subsequently, the Court also dismissed Defendant Mike Randles in his official and individual capacities and Defendants Tim Miller and Tim Lane in their official capacities only (September 29, 2008 Memorandum and Order, Court Doc. 22). Thus, Plaintiff's claims which are presently before the Court for review are his claims brought under 42 U.S.C. §§ 1983, 1985(2) & (3) and 1986 against Terry Stacey and Clay Parker in their official and individual capacities and against Tim Miller and Tim Lane in their individual capacities only.

2

**B.    Relevant Facts**

1.    <u>Plaintiff George Mason</u>

The Plaintiff has submitted no affidavits or other evidence in opposition to the Defendants' joint motions for summary judgment.  However, Plaintiff's complaint was sworn and properly notarized and therefore shall be treated as an affidavit for purposes of the two motions for summary judgment.  *Hooks v. Hooks*, 771 F.2d 935, 947 (6th Cir. 1985) (sworn complaint treated like an affidavit for purposes of a motion for summary judgment); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (verified complaint signed under penalty of perjury carries same weight as affidavit).  For purposes of a motion for summary judgment, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).  Thus, to effectively raise a genuine issue of material fact, plaintiff's sworn complaint must also be based on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."   Fed. R. Civ. P. 56(e)(1).

The Plaintiff sets forth the following facts in his sworn complaint:

On or about June 1, 2006, Plaintiff was stopped in Bedford County, Tennessee by Defendants Miller and Lane, both members of the 17th Judicial District Drug Task Force (Drug Task Force).  Miller instructed Plaintiff to lie on the ground directly behind a vehicle driven by Lane.  Lane backed the vehicle over Plaintiff's right arm until Miller told Lane "this N[ _ _ _ _] has had enough." (Complaint, Court Doc. 1-2, at 8).  Miller drew his weapon and directed Plaintiff to get up and sit in his (Plaintiff's) vehicle.  Miller then grabbed Plaintiff

3

from his vehicle, threw him on the ground, and ordered him to stand on his feet.  Lane handcuffed Plaintiff and poked Plaintiff "extremely hard" in his ribs, telling him that he was sending him back to prison.  Miller pulled his service revolver and pointed it directly at Plaintiff's head and told him if he breathed too hard he would blow his head off.  Miller told Plaintiff he was being arrested for "making an illegal crossing, or turn." (*Id*. at ¶ 9).

Plaintiff was denied medical care after Miller directed personnel at the Bedford County Jail not to provide medical treatment to him unless he (Miller) or Lane directed them to provide such care.  All of Plaintiff's medical requests were denied.  (*Id*.).

Plaintiff met with Stacey, the Bedford County Warrant Commissioner, concerning his complaint against Lane and Miller for excessive use of force, but Stacey refused to file his complaint stating, "[I am] not going to file any complaints against [my] officers, for no N_ _ _ _], whom [sic] needs a good beat down anyway." (*Id*. at ¶ 10).  Plaintiff contends that prior to his meeting with Stacey, "Miller had consulted with Defendant Stacey concerning the manufacturing of false criminal charges being logged against the Plaintiff and the two of them prepared a false affidavit of complaint against Plaintiff. (*Id*. at ¶ 10).  Plaintiff contends Stacey and Miller made a false affidavit of complaint, alleging that Plaintiff sold drugs to an informant working for Miller and that Plaintiff attempted to run into Lane's vehicle on June 1, 2006, for which Plaintiff was charged with evading arrest and reckless endangerment. (*Id*.).

On August 25, 2006, Miller, Keene, a parole hearing officer, and someone Plaintiff identifies only as "Randels" agreed to revoke the Plaintiff's parole on non-existent grounds.  Miller subsequently dropped the "manufactured, false criminal charges" against Plaintiff

which provided the grounds for revoking Plaintiff's parole. Plaintiff contends he was denied a copy of the parole revocation hearing tape because Miller, Keene, and Randels destroyed the tape, thus preventing him from appealing the decision of the parole board. (*Id*. at ¶ 9).

Plaintiff attached to his complaint two type-written notes from Sheriff Clay Parker; one was dated July 14, 2006 and the other was dated August 14, 2006. In these notes, Parker informed Plaintiff that he had talked with James Bonner, a Bedford County detective, about Plaintiff's allegations against Miller and Lane, and Parker advised Plaintiff that neither Lane nor Miller are his (Parker's) employees. Parker further advised Plaintiff he had passed on Plaintiff's complaint to Chief Austin Swing and told the Plaintiff that Lane worked for District Attorney General Mike McGown and that Miller worked for the Lincoln County Sheriff's Department. Parker also advised Plaintiff that the judicial commissioner did not find probable cause to issue a warrant. (*See* Exhibit A attached to Complaint, Doc. 1-2).

### 2. Sheriff Clay Parker

Sheriff Parker submitted his affidavit in support of his motion for summary judgment in which he stated, in relevant part: on June 1, 2006, he was the Sheriff of Bedford County, Tennessee. (Parker Aff. at ¶ 2). His term as Sheriff ended August 31, 2006. (*Id.* at ¶ 2). Neither Tim Miller nor Tim Lane were employees of the Bedford County Sheriff's Department between June 1, 2006 to August 31, 2006. (*Id.* at ¶ 3). While Plaintiff was in the Bedford County jail he made a complaint to Parker in the form of a jail grievance about Miller and Lane and Officer Crews, a member of the Shelbyville Police Department. Parker

5

advised Plaintiff that Miller and Lane were not his employees, and he was leaving office as the Sheriff in two weeks. (*Id.* at ¶ ¶ 5-6). Since all Parker's detectives except James "Scooter" Bonner were leaving as well, Parker asked Bonner to talk to Plaintiff. (*Id.* at ¶ 6). Parker left office less than two weeks later and does not know what Bonner did to investigate the complaint. (*Id.* at ¶ 6). Parker told Plaintiff if he wanted to pursue criminal charges, Parker would assign a detective to his complaint; however, Parker told him his "best course of action" was to contact the Lincoln County Sheriff where Miller was assigned prior to the Drug Task Force, the Shelbyville Police Department, or the District Attorney General. (*Id.* at ¶ 9). He does not condone the alleged acts taken against Plaintiff by Miller and Lane. Because Miller and Lane were not his employees, he would not have had authority to discipline them. (*Id.* at ¶ 8).

3.  Judicial Commissioner Terry Stacey

Terry Stacey submitted his affidavit in support of his motion for summary judgment stating in relevant part: Terry Stacey is a Judicial Commissioner for Bedford County, Tennessee and was during all times relevant to this lawsuit. (*See* Stacey Aff. at ¶¶ 2, 5-9). His duties include the issuance of arrest warrants and the setting of initial bonds. (*Id.* at ¶ 3.) He did issue arrest warrants for Plaintiff on the basis of Tim Miller's sworn affidavit. (*Id.* at ¶ 5). Sometime after Plaintiff was arrested, Stacey visited Plaintiff at the Bedford County jail at Plaintiff's request. Plaintiff made a variety of complaints against Miller, Lane, and Officer Crews. (*Id.* at ¶ 6). Stacey told Plaintiff he could not perform an investigation due to his position as a judicial commissioner, and he advised Plaintiff to contact the Tennessee Bureau of Investigation, the Federal Bureau of Investigation or the District

6

Attorney General's Office. (*Id.* at ¶ 11). Stacey told Plaintiff it was his practice not to issue an arrest warrant against a law enforcement officer without a complete investigation first. (*Id.* at ¶ 9). Stacey denies making any racially derogatory comments to Plaintiff. (*Id.* at ¶ 12).

### 4. Drug Task Force Agents Tim Lane and Tim Miller

Tim Lane and Tim Miller's version of the facts differ significantly from that of the Plaintiff in certain material respects. On June 1, 2006, Lane was the Director of the Drug Task Force, and he was overseeing an undercover operation in which a confidential informant made a controlled drug buy from Plaintiff. (Lane Aff. ¶ 1). Tim Miller, Assistant Director of the Drug Task Force, and Officer Crews of the Shelbyville Police Department were also participating in the undercover operation. (Lane Aff. at ¶ 2, Miller Aff. at ¶¶ 1-2). The CI successfully made a controlled buy of $225 of crack cocaine from Plaintiff while Plaintiff and another man were seated in a white Jeep Cherokee in the Food Lion parking lot in Shelbyville, Tennessee. (Lane Aff. at ¶¶ 2-7; Miller Aff. at ¶¶ 2-6). About 45 minutes later, Miller and Lane, both in separate vehicles, attempted to stop Plaintiff in the Jeep Cherokee by activating their blue lights, but Plaintiff evaded them, at one point almost colliding with Lane's vehicle (Lane Aff. at ¶ 9-10, Miller Aff. at ¶¶ 7-9). They pursued him until the Jeep Cherokee came to a stop in front of a duplex on Woodbury Street. The passenger in the Jeep jumped out and ran. Officer Crews pursued him. (Lane Aff. at ¶ 11, Miller Aff. at ¶ 9-10). Miller and Lane approached the Jeep with weapons drawn. Miller opened the driver's door and ordered Plaintiff out at gunpoint. (Lane Aff. at ¶12, Miller Aff. at ¶ 12). Miller ordered Plaintiff onto the ground and handcuffed him. (Lane Aff. at ¶ 12, Miller Aff. at ¶ 12). Once Plaintiff was in custody, Lane re-entered his car to assist Crews

7

in his pursuit of the passenger.  As Lane was backing up, Miller slapped the hood of his vehicle to get Lane's attention, and Miller moved Plaintiff from the path of the vehicle. Miller then signaled that it was safe for Lane to proceed.  Lane did not run over Plaintiff's right arm. (Lane Aff.  at ¶ ¶ 13-14, Miller Aff.  at ¶ 12). Miller helped Plaintiff to stand up and to sit in the driver's side of his (Plaintiff's) vehicle. (Miller Aff.  at ¶ 14).  Miller informed Plaintiff he was under arrest for, among other things, sale of a Schedule II drug. (Lane Aff. at ¶ 16, Miller Aff.  at ¶ 14).  Sgt. Collins of the Shelbyville Police Department transported Plaintiff to the Bedford County Jail. (Lane Aff.  at ¶ 18, Miller Aff.  at ¶ 16).   Shortly thereafter, Lane and Miller obtained a formal warrant for Plaintiff's arrest and executed it at the Bedford County Jail.  (Lane Aff.  at ¶ 19, Miller Aff.  at ¶ 17).   Lane denies making any statement using the word "n____" and poking Plaintiff in the ribs.  In fact, Lane states he had no physical contact whatsoever with Plaintiff. (Lane Aff.  at  ¶ 23-24).  Miller denies pointing a firearm at Plaintiff and threatening to blow off his head if Plaintiff breathed too hard or moved an inch.  (Miller Aff.  at ¶  23).

Miller and Lane have also submitted the affidavit of Robert Overstreet in support of their motion for summary judgment.  Overstreet was the Intake Officer for the Bedford County Sheriff's Department on June 1, 2006.  (Overstreet Aff.  at ¶ 1).  Sometime after 6 p.m. on June 1, 2006, Officer Tony Collins of the Shelbyville Police Department brought Plaintiff to the Bedford County Jail.  Plaintiff was charged with several offenses, including selling of a Schedule II drug. (*Id*. at ¶ 2).  Plaintiff did not appear to be in any physical distress, and he did not complain of any injury or medical problem.  (*Id.* at ¶ ¶ 3 and 5). As Intake Officer, Overstreet was required to complete the Inmate Medical Form with Plaintiff.  In the process of completing this form, Plaintiff denied he was in pain or had any

8

injury requiring medical care. (*Id.* at ¶ 6). Tim Miller did not direct him (Overstreet) to withhold medical treatment from Plaintiff. (*Id.* at ¶ 7).

Subsequently, on June 27, 2006, Plaintiff pled guilty to charges of the sale of a Schedule II drug stemming from the June 1, 2006 controlled buy described herein and received a sentence of ten years incarceration. (Lane Aff. at ¶ 21, Miller Aff. at ¶ ¶ 19-20), *see also* Judgment in *State v. George S. Mason*, Docket No. 16153 (Criminal Court of Bedford County, June 22, 2007), Doc. 31-1).

## III.    STANDARD OF REVIEW

### A.    Screening Pursuant to 28 U.S.C. §§ 1915(e) and 1915A

This Court has an ongoing responsibility under the Prison Litigation Reform Act, 28 U.S.C. § § 1915 (e)(2) and 1915(A),  to review Plaintiff's action and dismiss the action or any portion of the action which fails to state a claim for which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A; *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir.1997), overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007).  Therefore, in addition to reviewing the Defendants' motions for summary judgment, the Court will also examine the Plaintiff's remaining claims to determine if each one states a claim for which relief can be granted.

The standard required by §§ 1915(e)(2) and 1915A to properly state a claim for which relief can be granted is the same standard required by Fed. R. Civ. P. 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  In determining whether a party has set forth a claim in his complaint for which relief can be granted, all well-pleaded factual allegations contained in the

9

complaint must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, __, 127 S.Ct. 2197, 2200 (2007) (per curiam)*, Bell Atlantic Corp. v. Twombly,* 550 U.S 544, __, 127 S.Ct. 1955, 1974 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. 89, __ 127 S.Ct. at 220, (quoting *Twombly*, 550 U.S. 544, __, 127 S.Ct. at 1959.) Further, a *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. 89,__, 127 S.Ct. at 2200 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B.  Review under Federal Rule of Civil Procedure 56

Under Fed. R. Civ. P. 56, the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Pennington v. State Farm Mut. Auto,. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009), Fed. R. Civ. P. 56(c).   The burden is on the moving party to show conclusively that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 431 (6th Cir. 2008); *In re: Julien Co.,* 44 F.3d 426, 429 (6th Cir. 1995).   Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations; the nonmoving party must come forward with some significant probative

evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411; *see also Guarino v. Brookfield Tp Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). *See also* Fed. R. Civ. P. 56(e)(2) (opposing party must set forth specific facts by affidavit or as otherwise provided by Rule 56 showing a genuine issue for trial). Evidence may include discovery and disclosure material on file as well as affidavits. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but the court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## IV.    ANALYSIS OF PLAINTIFF'S CLAIMS

### A.    Plaintiff's Conspiracy Claims Brought Under 42 U.S.C. §§ 1985(2) and (3).

Employing a generously broad reading of the Plaintiff's complaint, the Court finds Plaintiff is alleging two different racially motivated conspiracies in violation of 42 U.S.C. §§ 1985(2) & (3). In the first alleged conspiracy, Defendants used their public offices and positions of authority to manufacture false criminal charges against the Plaintiff in order to cover-up Lane and Miller's use of excessive force, have Plaintiff's parole revoked, and

11

send Plaintiff back to prison, thereby intentionally depriving him of equal protection of the laws in violation of 42 U.S.C. §§ 1985(2) & (3). In the second alleged conspiracy, Stacey and Parker refused to take action against Miller and Lane in order to cover-up Miller and Lane's use of excessive force against Plaintiff thereby intentionally depriving him of equal protection of the laws in violation of 42 U.S.C. §§ 1985(2) & (3).

42 U.S.C. § 1985(2) provides a civil remedy to an injured party to recover damages where two or more persons have engaged in a racially motivated conspiracy to obstruct the administration of justice in a state or territory of the United States. *See* 42 U.S.C. § 1985(2); *see also Felder v. Casey*, 487 U.S. 131, 137 n. 1 (1988) ("Petitioner ... stated a claim based on 42 U.S.C. § 1985(2), alleging a racially motivated conspiracy to interfere with his access to the state courts."); *accord Kush v. Rutledge*, 460 U.S. 719 (1983); *Allen v. Allied Plant Maintenance Co. of Tennessee*, 636 F.Supp.1090, 1093 (M.D. Tenn. 1986).

42 U.S.C. § 1985(3) provides a civil remedy to an injured party to recover damages where two or more persons have engaged in a racially motivated conspiracy to deprive an individual of equal protection of the law or equal privileges and immunities of the law. 42 U.S.C. § 1985(3). *See also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 619 n. 37 (1979) (42 U.S.C. § 1985 "provides a civil remedy in damages to a person damaged as a result of conspiracies to deprive one of certain civil rights.") To prevail on a Section 1985(3) claim, a plaintiff must demonstrate: (1) defendants conspired together; (2) for the purpose of depriving him, either directly or indirectly, of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) defendant committed an act in furtherance of the conspiracy; (4) which caused injury to plaintiff or his property, or

deprived him of any right or privilege of a citizen of the United States; and (5) the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)); *accord*, *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir.1994).

       1.     <u>Alleged Conspiracy to Fabricate False Drug Charges Against Plaintiff</u>

Specifically, Plaintiff alleges (1) Miller and Lane engaged in a racially motivated conspiracy to fabricate drug charges against the Plaintiff stemming from the June 1, 2006 incident, (2) Stacey and Miller engaged in a racially motivated conspiracy to prepare an affidavit and issue a warrant for Plaintiff's arrest based on fabricated drug charges stemming from the June 1, 2006 incident, and (3) Miller engaged in a racially motivated conspiracy with at least one hearing parole officer to revoke the Plaintiff's parole based on fabricated drug charges stemming from the June 1, 2006 incident. These claims are asserted against Miller and Lane in their individual capacities and against Stacey in his individual and official capacities.

These particular conspiracy claims are dependent upon Plaintiff's assertion that the Defendants fabricated the charge of selling an illegal drug. However, it is undisputed that Plaintiff pled guilty to the charge of selling an illegal drug in the Bedford County Criminal Court on June 22, 2006 and that this charge arose from the June 1, 2006 incident. Further, there is no evidence in the record that this criminal judgment was invalidated or set aside.

While Plaintiff seeks release from confinement as a remedy for his claims brought under 42 U.S.C. § § 1983, 1985, and 1986, "[c]hallenges to the validity of any confinement

13

or to the particulars affecting its duration are the province of habeas corpus," not a civil tort action. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because "civil torts actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," a plaintiff cannot use a civil rights action to collaterally attack a criminal offense for which he has already pled guilty unless his criminal judgment "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

While *Heck* addressed the viability of a claim for damages brought under 42 U.S.C. § 1983 challenging the constitutionality of a conviction and subsequent imprisonment, the same principle applies to conspiracy claims brought under 42 U.S.C. § 1985. *Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003) (claim brought under § 1985 that defendants conspired to prevent plaintiff's witnesses from testifying on plaintiff's behalf at his criminal trial was barred by *Heck* because plaintiff's § 1985 claim sought damages arising out of his conviction which had not been set aside.) *See also Lueck v. Wathen*, 262 F.Supp.2d 690, 696 (N.D. Tex. 2003) ("*Heck* precludes a prisoner from maintaining a civil rights action for damages based on the legality of a prior criminal proceeding unless a state court or federal habeas court has determined that the terms of the confinement are in fact invalid. The critical inquiry is whether a judgment in favor of the plaintiff in the civil rights case would necessarily imply the invalidity of his conviction or sentence.") (citing *Heck*, 512 U.S. at 485-87).

14

Judgment in favor of Plaintiff on these conspiracy claims in the instant case would render Plaintiff's June 22, 2006 criminal judgment invalid. Therefore, since his criminal judgment has not already been rendered invalid or set aside, then these conspiracy claims are barred as a matter of law by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and must be dismissed. Further, to the extent that Plaintiff alleges his parole revocation was based on some other (unspecified) charge fabricated by Miller besides selling an illegal drug, the Plaintiff has not alleged or shown that his parole revocation has been overturned either on direct appeal or by a federal habeas corpus decision. Thus, this claim is also barred by *Heck v. Humphrey*. *See Norwood v. Michigan Dep't of Corrections*, 67 Fed.Appx. 286, 287-88 (6th Cir. 2003) (unpublished) (plaintiff's § 1983 claim that defendants conspired to revoke his parole "necessarily implie[d] the invalidity of his confinement" and since plaintiff had not shown the revocation of his parole had been overturned, his claim was barred by *Heck v. Humphrey*.) [1]

In addition to being barred by *Heck v. Humphrey*, this conspiracy claim against Stacey in his official capacity is also barred under the doctrine of sovereign immunity. An action brought against a defendant in his official capacity is the same as an action brought against the governmental entity for which the defendant is an agent. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 752 (6th Cir. 2004). While Stacey may be an employee of

---

[1]Plaintiff does not seek a new parole revocation hearing to address alleged procedural deficiencies in the parole revocation process. *See Wilkinson v. Dotson*, 544 U.S. 74 (2005) (prisoners who did not seek immediate release from confinement but sought only new parole eligibility review could bring § 1983 action challenging constitutionality of parole proceedings.) Rather, Plaintiff seeks immediate release from confinement. (*See* Complaint at 4, 9.)

15

Bedford County[2], when he decides whether to issue an arrest warrant for a violation of state criminal laws, Stacey is acting as an agent of the State of Tennessee. "[A] City official pursues her duties as a state agent where enforcing state law or policy." *See Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1994) (a municipal prosecutor employed and paid by the city acted as an arm of the state in prosecuting or declining to prosecute state criminal offenses). Thus, Plaintiff's § 1985 claim against Stacey in his official capacity is a claim against the State of Tennessee and is therefore barred by sovereign immunity under the Eleventh Amendment. *See Abe v. Michigan Dep't of Consumer and Industry Servs.*, 2000 WL 1176878 * 1 (6th Cir. Aug. 9, 2000) (The state has immunity pursuant to the Eleventh Amendment for conspiracy claim brought under 42 U.S.C. § 1985); *accord Rayyan v. Sharpe*, 2008 WL 4601427 *4 n. 5 (W.D. Mich. Oct. 15, 2008); *Gilbert v. Correction Reception Ctr.*, 2008 WL 4347231, *5 (S.D.Ohio Sept.19, 2008); *Harper v. Kentucky Dep't of Corrections*, 2007 WL 204002, * 1 (E.D.Ky. Jan.24, 2007); *Farmer v. Tenn. Dep't of Safety*, 2006 WL 2128882, *2 (E.D.Tenn. July 27, 2006) (Jordan, J.)

---

[2]Tenn. Code. Ann. § 40-5-201(c) authorizes counties with a certain population to "create the position of one (1) or more judicial commissioners ...." Judicial commissioners are appointed by "a majority of the general sessions judges of the county," Tenn. Code. Ann. § 40-5-204, and are paid "from the general fund of the county...." Tenn. Code. Ann. § 40-5-203. Tenn. Code. Ann. § 40-5-201 specifically authorizes judicial commissioners to issue "arrest warrants upon a finding of probable cause."

2. <u>Alleged Conspiracy by Stacey and Parker to Cover-Up Miller and Lane's Use of Excessive Force on June 1, 2006.</u>

Plaintiff contends that, in an effort to cover up Lane and Miller's misdeeds, Parker refused to investigate Lane and Miller's use of excessive force against him, and Stacey refused to issue a warrant to arrest Lane and Miller for their abuse of him. The Court will address these claims against each defendant in turn.

a. *Parker*

A careful reading of the sworn complaint indicates that Plaintiff has not set forth one single fact to support an allegation that Parker was one of the Defendants who was acting as part of a conspiracy against him. In fact, the complaint fails to specifically allege that Parker was involved in any conspiracy at all. Consequently, Plaintiff's complaint fails to state a conspiracy claim against Parker. *See Amadasu v. The Christ Hosp.,* 514 F.3d 504, 507 (6th Cir. 2008) ("Amadasu offered nothing more than the conclusory allegation that the defendants acted in concert and, without more, failed to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive him of his civil rights.") Parker also denies in his affidavit taking any action to cover up any wrongdoing on the part of Miller and Lane. Plaintiff has come forward with no evidence to link Parker to a cover-up conspiracy. In addition, the complaint contains not a single allegation stating that Parker himself acted with racial animus against the Plaintiff, nor has Plaintiff come forward with such evidence. Under both a Rule 12(b)(6) standard or a Rule 56 standard, this conspiracy claim against Parker in his individual capacity shall be dismissed.

17

Plaintiff's conspiracy claim against Parker in his official capacity must also be dismissed on the ground that a municipality cannot be held liable under § 1985 for the acts of one of its agents absent an underlying violation by that agent. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (plaintiff could not maintain action brought under 42 U.S.C. § 1983 against the City of Los Angeles for arrest without probable cause and use of excessive force based on the actions of one of its officers where there was no underlying violation by the officer)*; Jones v. City of Cincinnati,* 2006 WL 2987820 * 7 n. 6 (S.D. Ohio Oct. 17, 2006) ( "A municipality cannot be held liable under § 1983 absent an underlying constitutional violation by its officers."), *aff'd* 521 F.3d 555 (6th Cir. 2008). The same principle applies to a § 1985 claim. *See Sasin v. County of Kings*, 67 Fed. Appx. 413, 417 (9th Cir. 2003) (unpublished) (since plaintiff could not maintain an action under § 1985 and § 1986 against county law enforcement officers, plaintiff could not maintain an action under § 1985 and §1986 against the county based on the actions of its law enforcement officers.)

Finally, there is no constitutional, statutory, or common law right of a private citizen to require a public official to investigate or prosecute a crime. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another") (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)); *Sattler v. Johnson*, 847 F.2d 224, 227 (4th Cir.1988) (no constitutional right under Equal Protection Clause to secure prosecution of another); *Walker v. Schmoke*, 962 F.Supp. 732, 733 (D.Md.1997) ("[N]o federal appellate court, including the Supreme Court ... has recognized that there is a federally enforceable right for the victim to have criminal

18

charges investigated at all, let alone with vigor or competence."); *Fulson v. City of Columbus*, 801 F.Supp. 1, 6 (S.D.Ohio 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act."). Accordingly, on this basis alone, the conspiracy claim against Parker in his official and individual capacities will be dismissed for failure to state a claim for which relief can be granted.

> b. *Stacey*

To the extent that Plaintiff asserts his rights were violated by Commissioner Stacey's refusal to issue a warrant for Lane and Miller's arrest for their alleged abuse of Plaintiff, Stacey is entitled to judicial immunity. Judicial immunity attaches to actions undertaken in a judicial capacity. *Forrester v. White*, 484 U.S. 219, 227-229 (1988). An action taken in a judicial capacity is a "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349 (1978). "An act is non-judicial if it is one not normally performed by a judicial officer or if the parties did not deal with the judge in his official capacity." *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985) (citing *Stump*, 435 U.S. at 356-59).

Determining whether to issue an arrest warrant is a function normally performed by a judge. *Burns v. Reed*, 500 U.S. 478 (1991) ("The issuance of a search warrant is unquestionably a judicial act.") Terry Stacey, as a judicial commissioner, had authority under Tennessee law to issue arrest warrants, and concomitantly, *not* to issue an arrest warrant. Under Tenn. Code. Ann. § 40-5-102, a judicial commissioner is a magistrate, and Tenn. Code. Ann. § 40-5-101 provides that "[a] magistrate is an officer having power to

issue a warrant for the arrest of a person charged with a public offense." *See also* Tenn. R. Crim. P. 4 (authorizing a magistrate to issue an arrest warrant upon a showing of probable cause). Stacey met with the Plaintiff in Stacey's capacity as a judicial commissioner and decided not to issue an arrest warrant. Thus, Stacey is entitled to absolute immunity for his decision not to issue an arrest warrant for Lane and Miller.[3] Accordingly, this claim shall be dismissed for failure to state a claim for which relief can be granted.[4]

To the extent Plaintiff also brings this § 1985 conspiracy claim against Stacey in his official capacity, that claim must also be dismissed on the basis of Eleventh Amendment sovereign immunity. *See* text and cases cited *supra* p. 15.

### B. Plaintiff's Claim under 42 U.S.C. § 1986

Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985. Thus, "[s]ection 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th

---

[3] The Court does not mean to suggest that Stacey's alleged racial comment to Plaintiff at the Bedford County Jail, assuming Stacey did make such a comment, is conduct befitting a judicial officer. If Stacey did, in fact, make such a comment, the Court finds this conduct to be deplorable and a likely violation of the Rules of Judicial Conduct, Rules 10-24 of the Rules of the Supreme Court of the State of Tennessee. However, whether Stacey made such a comment is not material to the issue of whether Stacey is entitled to judicial immunity for refusing to issue an arrest warrant.

[4] To the extent the Court needs to rely on Stacey's affidavit to identify more specifically Stacey's position as a Judicial Commissioner of Bedford County, then the conspiracy claim to cover-up Lane's and Miller's alleged wrongful acts by refusing to issue a warrant is properly dismissed under a Rule 56 standard.

Cir. 2005) (quoting 42 U.S.C. § 1986). Accordingly, a claim under 42 U.S.C. § 1986 may

only be pursued where a plaintiff states a cause of action for a civil rights conspiracy under

42 U.S.C. § 1985. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990); *see also*

*Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (dismissing § 1986 action because §

1985 conspiracy action was already dismissed.) Since Plaintiff has no cognizable claim

of a conspiracy in violation § 1985(2) or § 1985(3), his claim brought under § 1986 that

Stacey and Parker negligently failed to prevent or aid in preventing the commission of a

conspiracy against him will be dismissed as a matter of law.

### C. Plaintiff's Claims under 42 U.S.C. § 1983 of Excessive Force and Deliberate Indifference of a Serious Medical Need Against Lane and Miller

While the parties strongly disagree about the facts surrounding the Plaintiff's arrest

on June 1, 2006, when reviewing a motion for summary judgment pursuant to Fed. R. Civ.

P. 56, the Court does not evaluate the credibility of the parties. Rather, the Court must

view the facts and all reasonable inferences drawn therefrom in the light most favorable

to the non-moving party. *See* text and cases cited *supra*. Thus, for purposes of this motion,

the Court must consider as true the Plaintiff's version of the facts regarding the manner in

which he was arrested by Lane and Miller on June 1, 2006.

Plaintiff states in his sworn complaint that Lane backed the vehicle over Plaintiff's

right arm until Miller told Lane "this N[_ _ _ _] has had enough." As a result, Plaintiff's

shoulder was seriously injured. Plaintiff also asserts that at the Bedford County Jail, he

requested medical treatment for his injuries, but Miller directed intake personnel not to

provide medical treatment unless and until he (Miller) and Lane told them to do so. Plaintiff

was not provided medical treatment until a much later time.  As a result of Miller and Lane's conduct, Plaintiff has suffered permanent physical injury to his right arm and back and mental and emotional trauma.

Section 1983 is a remedial statute which does not itself create independent substantive legal rights.  Section 1983 simply provides a vehicle by which a person may recover damages for a violation of his rights otherwise secured to him by federal law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).  To make out a claim under § 1983, a plaintiff is required to show that he has been deprived of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and that the defendants caused the deprivation while they were acting under color of state law.  *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006); *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley,* 167 F.3d 1014, 1017 (6th Cir. 1994).

    1.    <u>Excessive Use of Force</u>

Plaintiff alleges Lane and Miller used excessive force to arrest him on June 1, 2006. All claims that police used excessive force to effect an arrest are properly analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 389 (1989).  The Fourth Amendment guarantees citizens the right to be secure in their persons against unreasonable seizures.  *Graham*, 490 U.S. at 394.  In reviewing whether an officer has used excessive force, the Court must forego the luxury of 20/20 hindsight vision. *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006) (citing *Graham*, 490 U.S. at 396).  Rather, the reasonableness of the force used by an officer to effect an

22

arrest must be considered from the perspective of a reasonable officer based on the facts and circumstances of the particular incident in question at the time the incident took place. *Id*. Factors this Court considers in determining whether officers used excessive force include: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Sigley*, 437 F.3d at 534 (citing *Dunigan v. Noble*, 390 F.3d 486, 492 (6ᵗʰ Cir. 2004)).

In certain instances, even where an underlying constitutional violation exists, a state actor may nonetheless be excused from liability for the constitutional violation under a principle known as "qualified immunity." "[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "acknowledge[s] that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Where a defendant raises the defense of qualified immunity, the Court must make two determinations: (1) whether the plaintiff has alleged the violation of an actual constitutional right at all; and (2) whether that right was clearly established at the time of the alleged violation. *Katz*, 533 U.S. at 200; *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Griffith v. Coburn*, 473 F.3d at 650, 656 (6ᵗʰ Cir. 2007).

According to Lane's and Miller's affidavits, on June 1, 2006 they were attempting to arrest Plaintiff on drug charges, a serious crime, and the Plaintiff fled in his vehicle, at

one point almost colliding with Lane's vehicle. Plaintiff has not contested these particular facts in his sworn complaint or by any other method permitted by Rule 56 to raise a genuine issue of material fact. Nevertheless, Plaintiff has asserted in his sworn complaint that he was subdued and lying on the ground when Lane intentionally ran over his right arm with Lane's vehicle. There can be little doubt that intentionally running a vehicle over the arm of a suspect lying on the ground during the process of arresting the suspect constitutes the use of excessive force. Furthermore, Defendants cannot reasonably argue that the right to be free of such a means of arrest was not a clearly established right on June 1, 2006. In fact, Miller and Lane make no such argument at all. Rather, they argue Lane did not run over Plaintiff with Lane's vehicle. Since the Court must view the facts in the light most favorable to the nonmoving party, the Court must accept the Plaintiff's version of this incident and, in doing so, conclude there is a genuine issue of material fact as to the Plaintiff's claim of excessive force against Lane and Miller. Thus, Lane and Miller are not entitled to summary judgment on this particular claim.

2.    Deliberate Indifference to Serious Medical Need

Viewing the facts in the light most favorable to the nonmoving party, the relevant facts as to this claim are: Plaintiff suffered serious injury to his right arm after Lane ran over it with his vehicle. At the Bedford County Jail, Plaintiff requested numerous times that he receive medical treatment for his injuries, but he received none because Miller told intake personnel at the Bedford County Jail not to provide medical treatment until he or Lane told them to do so.

The Fourteenth Amendment provides pretrial detainees a right to adequate medical care which is analogous to that right provided prisoners under the Eighth Amendment. *City*

24

*of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6ᵗʰ Cir. 2005); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6ᵗʰ Cir. 2001). To prevail under the Fourteenth or Eighth Amendment for failure to provide adequate medical care, a plaintiff must show the defendant acted with deliberate indifference to the plaintiff's serious medical needs. *Estate of Carter,* 408 F.3d at 311; *Watkins*, 273 F.3d at 686. "Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the plaintiff's] health and safety." *Watkins*, 273 F.3d at 686 (citing *Farmer v. Brennan,* 511 U.S. 825, 835-37 (1994)); *see also*, *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (deliberate indifference requires proof of conduct which violates "contemporary standards of decency.") "There are two parts to the claim, one objective, one subjective. For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need. For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Estate of Carter,* 408 F.3d at 311 (internal citations omitted).

The complaint makes no allegation that Plaintiff told Lane he needed medical care, that Lane knew he needed medical care, or that Lane prevented others from giving him medical care. Thus, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment against Lane.

As to Miller, however, Plaintiff has asserted a viable claim. In his motion for summary judgment, Miller argues he did not run over Plaintiff's arm, thus Plaintiff needed no medical treatment for an injured arm. Further, Miller has produced evidence that

25

Plaintiff complained of no injury at the Bedford County Jail. However, in viewing the facts in the light most favorable to Plaintiff, Plaintiff's arm was run over by Miller's vehicle and, as a result, he suffered serious permanent injury to his arm. He asked many times for medical care but wasn't provided medical care because Miller told the intake personnel not to provide medical care without Miller's direction. While the facts in Plaintiff's sworn complaint are sparse, they are sufficient to raise a genuine issue of material fact concerning whether Plaintiff was seriously injured, whether Miller was aware of this injury, and whether Miller acted with deliberate indifference in instructing and causing others not to provide medical care. Thus, Miller is not entitled to summary judgment on this particular claim.

> **D.** **Plaintiff's Claim under 42 U.S.C. § 1983 of Excessive Force and Deliberate Indifference to a Serious Medical Need Against Parker**

Plaintiff's complaint names Parker as a Defendant and identifies him as the Sheriff of Bedford County. Plaintiff also attaches two typewritten notes from Parker to Plaintiff. In these notes, Parker tells Plaintiff he has asked Bedford County Detective Bonner to investigate his claims against Lane and Miller and suggests the names of other individuals with whom Plaintiff may wish to lodge a complaint. Parker also informs Plaintiff he will be leaving office August 31, 2006. There are no other specific facts set forth in the complaint about Parker. There are no allegations that Parker was personally involved in the June 1, 2006 events. Nevertheless, under a very generous interpretation of Plaintiff's complaint, it appears Plaintiff is alleging that Sheriff Parker is liable for the unconstitutional conduct of Lane and Miller. This assertion assumes Lane and Miller were employees of the Bedford County Sheriff's Department on June 1, 2006. Lane, Miller and Parker all assert

26

they were not.  The Court has already determined that Lane and Miller were not employees of the Bedford County Sheriff's Department on June 1, 2006. (*See* September 29, 2008 Memorandum and Order at 18, Doc. 22).   It is undisputed that Lane and Miller were members of the 17th Judicial District Drug Task Force on June 1, 2006.  Pursuant to Tenn. Code. Ann. §  8-42-101(3)(C), all members of a judicial district drug task force are "volunteers" of the State of Tennessee, not employees, agents, or servants of a local government.  *See id.*  Thus, Parker was not Lane and Miller's supervisor and had no supervisory control over them.

Further, even if Parker had been Miller and Lane's supervisor, he could not be held liable pursuant to § 1983 for Lane and Miller's conduct on that basis alone because tere is no *respondeat superior* liability under Section 1983.  *Toms v. Taft* 338 F.3d 519, 533 (6th Cir. 2003); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992); *Clark v. Kentucky*, 229 F.Supp. 2d 718, 723 (E.D. Ky 2002).  Supervisory liability must be based on more than the mere right to control one's employees.  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). A plaintiff must show more that "mere tacit approval of the goings on."  *Bass*, 167 F.3d at 1048.  "Instead, liability must be based upon active unconstitutional behavior."  *Bass*, 167 F.3d at 1048.  The supervisor of a violating party may be liable for that party's violation of a plaintiff's constitutional rights if the supervisor encouraged the unconstitutional conduct or participated in some other way directly in the conduct.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.");  *accord Everson v. Leis*, _ F.3d _

27

, 2009 WL 414625 (6th Cir. Feb. 20, 2009). In his affidavit for summary judgment, Parker states he did not and does not condone any of Lane and Miller's conduct alleged by Plaintiff. There is no evidence to suggest otherwise. Thus, Parker, in his individual capacity, is entitled to summary judgment as to these claims as well.

To the extent Plaintiff has brought a claim under § 1983 for excessive force and deliberate indifference to a serious medical need against Parker in his official capacity, *i.e.* Bedford County, those claims must also be dismissed on the ground that a municipality cannot be held liable under § 1983 for the acts of one of its agents absent an underlying violation by that agent. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). These claims against Bedford County can also be dismissed for failure to state a claim on the ground that Plaintiff has failed to alleged an official policy or custom on the part of Bedford County for such constitutional violations. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997); *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658 (1978); *McCloud v. Testa*, 97 F.3d 1536, 1558 (6th Cir.1996).

### E. Plaintiff's Claim Under Tenn. Code Ann. § 41-1-103

Plaintiff alleges Defendants violated Tenn. Code. Ann. § 41-1-103 "to carry out the duties of their respective offices and position [sic] in an impartial and diligent manner, and to comply with the laws of such positions and offices" and are therefore personally liable to him "for any and all injuries suffered as a result of their malicious acts and omissions." (Complaint at 7, Court Doc. 1-2). However, Tenn. Code. Ann. § 41-1-103 applies only to "[a]ll officers and other persons so employed to control and manage the penitentiary of the state," *id.*, a category which applies to none of the remaining defendants. Thus, assuming

28

*arguendo* that the statute would provide a private right of action, it would not apply to Lane, Miller, Parker or Stacey. Thus, this claim shall be dismissed for failure to state a claim for which relief can be granted.

## V.    CONCLUSION

For the reasons explained herein, Defendants Clay Parker and Terry Stacey's joint motion for summary judgment (Court Doc. 57) is **GRANTED**, and Defendants Tim Lane and Tim Miller's joint motion for summary judgment (Court Doc. 51) is **GRANTED IN PART** and **DENIED IN PART**.

Further, the Court has also conducted a review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and determined certain of the Plaintiff's claims fail to state a claim for which relief can be granted.

Accordingly, the following claims are **DISMISSED**: Plaintiff's conspiracy claims brought under 42 U.S.C. § 1985(2) and (3), Plaintiff's claims brought under 42 U.S.C. § 1986, Plaintiff's claim of excessive force in violation of the Fourth Amendment against Sheriff Parker in his individual and official capacities brought under 42 U.S.C. § 1983, Plaintiff's claim of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment against Lane in his individual capacity and against Parker in his individual and official capacities brought under 42 U.S.C. § 1983, and Plaintiff's claim brought under Tenn. Code. Ann. § 41-1-103.

The only claims remaining for adjudication are: (1) Plaintiff's claim brought under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment against Lane

29

and Miller in their individual capacities;  and (2) Plaintiff's claim brought under 42 U.S.C. § 1983 against Miller in his individual capacity for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

SO ORDERED.

ENTER:


_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE